IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS SMITH, | ) | CASE NO. 3:08CV2917 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE ECONOMUS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| ROBERT WELCH, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is Thomas Smith's ("Smith") petition for a writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 on December 15, 2008.  Smith is in the custody of the

Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence

in the case of *State of Ohio vs. Smith*, Case No. 2006 CR 48 (Hancock County 2006).

For the reasons set forth below, Smith's petition should be dismissed.

I

The January 2006 term of the Hancock County grand jury indicted Smith on two

counts of felonious assault, one count of aggravated robbery, and one count of

kidnaping.  The state appellate court hearing Smith's direct appeal found the following

facts to be relevant to Smith's case:

{¶ 1} The defendant-appellant, Thomas D. Smith, appeals the judgment of the Hancock County Common Pleas Court convicting him of felonious assault, aggravated robbery, and kidnapping[1] and sentencing him to an aggregate prison term of 15 years.

{¶ 2} On February 25, 2006, Smith went to the Findlay Village Mall with Sean McKee and Jennifer Harmon, McKee's girlfriend, after drinking some alcoholic beverages.  While they were at the mall, Chris Berger called Harmon's cell phone several times, which angered McKee and Smith.  Eventually, Smith, McKee, and Harmon returned to Smith's home where they continued drinking and were joined by Nicole Bragenzer.  During this time, Berger continued to call Harmon's cell phone although he had been asked to stop.  McKee and Smith were angry because another man was repeatedly calling Harmon, so the group decided to meet Berger and retaliate against him.

{¶ 3} Unbeknownst to Berger, when Harmon and Bragenzer met him, Smith and McKee were hiding in the trunk of the car Harmon was driving.  Harmon drove to a remote location, and Smith and McKee got out of the trunk and forced Berger out of the car.  Smith hit Berger in the face, knocking him to the ground.  The men forced Berger to take off his clothes and then used a tire iron and a belt to beat him.  At some point, McKee urinated on Berger and photographs were taken.  After taking Berger's cell phone, wallet, and jacket, the group left him lying on the ground and drove away.  Berger managed to seek assistance from the occupants of a nearby farmhouse.

*State v. Smith*, 2007 WL 1039282, at *1 (Ohio App. April 9, 2007).

On May 31, 2006, the court accepted Smith's plea of guilty on all counts.  The court sentenced Smith to an agreed-upon seven years' imprisonment on one count of felonious assault, eight years' imprisonment for felonious assault, and eight years' imprisonment for kidnaping, the two eight-year sentences to be served concurrently with each other but consecutively to the seven-year sentence.

Smith filed a timely notice of appeal.  Smith presented a single assignment of error in his appeal:

---

[1] Ohio statutes spell "kidnaping" as "kidnapping."  That spelling is preserved in all quotations citing Ohio law.

2

Mr. Smith was denied the effective assistance of counsel when counsel allowed him to accept an agreed-upon sentence of non-minimum, consecutive prison terms.

On April 9, 2007, the state appellate court overruled Smith's assignment of error and affirmed the judgment of the trial court

On May 24, 2007, Smith filed in the Ohio Supreme Court a notice of appeal of the state appellate court's decision.  In his memorandum in support of jurisdiction, Smith asserted a single proposition of law:

Proposition of Law No. I:

A defendant is denied the effective assistance of counsel when his trial counsel allows him to accept an agreed-upon sentence of non-minimum, consecutive prison term.  [sic]

On September 28, 2007, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

Smith filed in the trial court on April 12, 2007 a motion for reconsideration of sentence.  The trial court denied the motion the same day.  Smith did not appeal the denial of this motion.

Smith filed a petition for a writ of habeas corpus in this court on December 15, 2008.  Smith's petition asserts one ground for relief:

Ground 1:  Petitioner was denied the effective assistance of counsel, as guaranteed by the Sixth Amendment to the Constitution of the United States of America, when trial counsel allowed him to accept an agreed-upon sentence of non-minimum, consecutive prison terms.[2]

(a)     Supporting facts:  Prior to Petitioner's plea, trial counsel counseled Mr.

---

[2]  Smith has withdrawn his challenge to the constitutionality of the trial court's sentencing him to consecutive, rather than concurrent, prison terms.  *See* Traverse, Doc. No. 6, p. 3.

3

Smith that by going to trial he could face more than the aggregate 3 years which would have been the maximum sentence allowed under *Blakely v. Washington*.  Counsel's performance fell below an objective standard of reasonableness in failing to counsel Petitioner on the effects of *Blakely* or inform him that he could face no more than minimum, concurrent sentences.  Instead, Mr. Smith agreed to a 15-year sentence, 12 years beyond the sentence authorized under *Blakely*.  Had counsel informed Mr. Smith of *Blakely*, Smith would not have agreed to the sentence.  Rather, he would have chosen to go to trial or agreed to a sentence of no more than 3 years.  Petitioner was denied the effective assistance of trial counsel, in violation of the Sixth Amendment to the United States Constitution when counsel allowed him to plea to non-minimum consecutive sentences.

Respondent filed an Answer/Return of Writ on April 6, 2009.  Doc. No. 5.  Smith filed a

Traverse on May 6, 2009.  Thus, the petition is ready for decision.

II

A.    *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective

jurisdiction:

Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Smith was convicted in the court of common pleas in Hancock County, situated

in the Northern District of Ohio.  At the time he filed his writ of habeas corpus in the

Northern District of Ohio, he was in prison pursuant to that conviction.  This court has

jurisdiction over Smith's petition.

4

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Smith's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Smith has no remaining state remedies for his claims.  Because Smith has no

5

remaining state remedies, his claims are exhausted.

D.    *Procedural default*

Procedural default occurs when a petitioner fails to present fairly his

constitutional claims to the highest state court in a federal constitutional context.

*Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270.  Reasons of federalism and comity

generally bar federal habeas corpus review of "contentions of federal law . . .  not

resolved on the merits in the state proceeding due to respondent's failure to raise them

there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and
> adequate state procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause for the default and actual prejudice
> as a result of the alleged violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Respondent does not argue that Smith has procedurally defaulted his claim.[3]

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered

the standard of review that a federal court must apply when deciding whether to grant a

---

[3]  As respondent correctly notes, an Ohio defendant pleading guilty and receiving an agreed-upon sentence may only challenge on appeal the voluntariness of his guilty plea. On direct appeal, Smith challenged the effectiveness of trial counsel in advising him to plead guilty and accept a 15-year sentence.  The state appellate court found that although Smith's assignment of error focused on Smith's sentencing, the claim was actually a contention that his plea agreement was not knowing, intelligent, and voluntary due to his counsel's failure to inform him of the then-current state of Ohio's sentencing law.  The state appellate court, therefore, treated Smith's assignment of error as an attack on the voluntariness of his guilty plea.

writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at

7

an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano, 237 F.3d 722, 729-31 (6th Cir. 2001).*  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  The magistrate judge will consider Smith's grounds for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

Smith contends that under Ohio law at the time of his sentencing, he could only have received a five-year sentence for his crimes.  Any other sentence, Smith argues, would have violated due process and his protection against *ex post facto* laws. Consequently, his trial attorney rendered ineffective assistance of counsel when he advised Smith to plead guilty in return for a 15-year sentence.  Respondent denies that the longest sentence Smith could have received was five years and denies that Smith's counsel was ineffective.

Smith's claim of ineffective assistance of counsel during his guilty plea hearing based upon the allegation that counsel misinformed him regarding potential sentences is, in effect, a claim that his guilty plea was not knowing, intelligent, and voluntary, as the state appellate court noted.  It is worth noting before examining Smith's claim of

8

ineffective assistance of counsel that the trial court was extremely thorough in assuring itself that Smith had consulted with his attorney, was satisfied with his attorney's representation, understood the charges against him, was mentally lucid, understood the recommended sentence, understood the potential sentences if he went to trial, knew what rights he relinquished by pleading guilty, was informed of his appellate rights, and was resolved to proceed with his guilty plea.  Transcript of proceedings ("Tr."), Answer, Exh. 16, pp. 19-38.  Smith's attorney also testified that he had reviewed with Smith the indictment, the state's evidence against him, potential trial strategies and defenses, Smith's rights, best case and worst case sentencing possibilities and the factors influencing sentencing, and the course of plea negotiations.  Tr. at 6-8.  Smith's attorney told the court that after these discussions, Smith was able to make a knowing and informed decision regarding his plea.  Tr. at 8-9.  Smith does not claim that his plea was less than knowing, intelligent, and voluntary in any respect other than alleged misinformation about his potential sentence due to ineffective assistance of counsel.

As reflected in the analysis below, Smith was well aware of the potential penalties and the consequences of his guilty plea.  His decision to plead was a strategic one.  His claim that his attorney failed to inform him of the appropriate sentencing law, as described below, is based on Smith's erroneous interpretation of the law and is factually refuted by the guilty plea colloquy and records.

A.      The standard for claims of ineffective assistance of counsel

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v.*

9

_Washington_, 466 U.S. 668, 686 (1984); _see also_ _Groseclose v. Bell_, 130 F.3d 1161,

1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

_Strickland_, 466 U.S. at 687; _see also_ _Groseclose_, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." _Strickland_, 466 U.S. 687-88; _see also_ _Groseclose_, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  _Strickland_, 466 U.S. at 689; _see also_ _Groseclose_, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" _Strickland_, 466 U.S. at 689 (quoting _Michel v. Louisiana_, 350 U.S. 91, 101 (1955)); _see also_ _Groseclose_, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." _Strickland_, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually

10

unchallengeable . . . ." *Id.* at 690-91 (1984); *see also* Groseclose, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the

error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

Strickland, 466 U.S. at 690-91 (citations omitted); *see also* Groseclose, 130 F.3d at

1168.  Further "the burden rests on the accused to demonstrate a constitutional

violation." United States v. Cronic, 466 U.S. 648, 658 (1984).  Showing a constitutional

violation requires showing that "counsel's unprofessional errors so upset the adversarial

balance between defense and prosecution that the trial was rendered unfair and the

verdict rendered suspect." Nix v. Whiteside, 475 U.S. 157, 175 (1986).  "Unreliability or

unfairness does not result if the ineffectiveness of counsel does not deprive the

defendant of any substantive or procedural right to which the law entitles him." Lockhart

v. Fretwell, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there

is a reasonable probability that, absent the errors, the factfinder would have had a

reasonable doubt respecting guilt." Strickland, 466 U.S. at 695; *see also* Groseclose,

130 F.3d at 1168.

*B.*    *Whether trial counsel was ineffective because Smith could only have received a five-year sentence under Ohio law*

The state appellate court reviewing Smith's guilty plea and sentence made the

following relevant findings of facts and conclusions of law:

11

{¶ 11} In this case, we cannot hold that trial counsel's performance was deficient. Smith was sentenced after the Supreme Court decided *Foster.* By May 31, 2006, this court had remanded several cases to the trial courts for new sentencing hearings pursuant to *Foster. State v. McKercher,* 3rd Dist. No. 1-05-83, 1006-Ohio-1772;*State v. Sanchez,* 3rd Dist. No. 4-05-47, 2006-Ohio-2141.  In those cases, the defendants were sentenced prior to *Foster,* but because their direct appeals were pending, we were required to remand for a new sentencing hearing.  Also in those cases, we noted that the ex post facto law argument was not properly before us for review.  *McKercher,* at ¶ 6; *Sanchez,* at ¶ 8.  Other appellate districts decided similar cases in the same manner.  On remand, the defendants were sentenced, and subsequently, some of them appealed their sentences, again arguing that *Foster* created an ex post facto law in violation of due process.  By that time, this Court had decided *State v. McGhee,* 3rd Dist. No. 17-06-05, 2006-Ohio-5162, in which we held that *Foster* violates neither federal notions of due process nor state protections against unconstitutionally retroactive laws. Smith was sentenced after *Foster* and prior to *McGhee.*  We must presume that counsel was aware of the precedent from this Court and from across the state, and Smith has failed to produce any evidence to the contrary.

{¶ 12} Furthermore, Smith was aware of the potential sentence he faced.  On the record, trial counsel clearly established that he and Smith had discussed several aspects concerning trial strategy.  As to sentencing, counsel stated:

> I've also gone into the sentencing possibilities that exist under Ohio law for the several felonies before the court.  Also gone into the concepts of merger, particularly with the felonious assault charges, possibly with the kidnapping and robbery.
>
> Reviewed with Mr. Smith a worse case scenario up to 36 years of liability if in fact there is no merger.  *Reviewed with Mr. Smith* a best case scenario of the probation violation, and *the minimum time of the offenses all running concurrently.*
>
> Reviewed with Mr. Smith various other plea negotiations that were made during one of the many pre-trial conferences in this case, including a range from 10 to 20 years.  And reviewed with Mr. Smith the four page document captioned pleas of guilty in this case.

(Emphasis added). (Hearing Trans., Jul. 26, 2006, at 6-7).  As stated in the record, Smith was counseled as to a "best case scenario" for sentencing.

{¶ 13} Smith faced a potential maximum sentence of 26-36 years in prison if convicted at trial and depending on whether the felonious assault charges merged.  Pursuant to Crim.R. 11, the trial court reviewed the potential sentences

with Smith prior to the entry of his guilty pleas.  (Hearing Trans., at 30:3-16).  Specifically, the trial court stated:

> And just to give you an idea of the absolute total range that could be imposed in this particular case, do you understand that if I were to run all of your sentences concurrently, and impose the minimum term, the term that I would impose would be 3 years? * * * However, if the Court were to go to the other end of the spectrum and decide it was appropriate to sentence you as to all four cases and impose maximum terms of a consecutive nature, that you could serve as long as-by my calculation-of up to 36 years?

(Hearing Trans., at 30-31).  The court also advised Smith that it was not bound to accept the 15 year sentence recommended by the parties.  (Hearing Tr., at 26:4-14).  Smith indicated his understanding of the court's statements.  The sentencing ranges were also set forth on the written plea agreement signed by the defendant. (Pleas of Guilty, May 31, 2006, at 1-2).  On this record, Smith was aware of the sentencing ranges and that the trial court could craft an appropriate sentence within that range.

{¶ 14} More importantly, Smith pled guilty in exchange for a recommended sentence of 15 years, despite his awareness that the trial court could disregard the recommendation and craft a different, potentially higher, sentence.  The decision to plead guilty in order to avoid a jury trial is a tactical strategy to which we afford counsel deference.  See generally *State v. Ketterer,* 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, at ¶ 85, citing *Strickland,* at 689.  Smith has received the benefit of his bargain.  Accordingly, we find Smith's argument without merit and overrule his sole assignment of error.

*Smith,* 2007 WL 1039282 at *3-*4.

At the time Smith pleaded guilty, Ohio Rev. Code § 2929.14 ("§ 2929.14")

governed sentencing in Ohio.  Section 2929.14(B) provided as follows:

(B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G)[4] of this section, in section 2907.02 of the Revised Code, or in Chapter 2925 of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:

---

[4]  Sections 2929.14(C), (D), & (G) were not applicable to Smith's offense.

(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.

(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

The court sentencing Smith found felonious assault to be a felony of the second degree and aggravated robbery and kidnaping to be felonies of the first degree.  Section 2929.14(A)(1) provided that for a felony of the first degree "the prison term shall be three, four, five, six, seven, eight, nine, or ten years."  Section 2929.14(A)(2) provided that for a felony of the second degree "the prison terms shall be two, three, four, five, six, seven, or eight years."  Section 2929.14(B) provided that a court shall sentence an offender to the shortest prison term authorized for the offense unless the offender was serving or had served a prison term at the time of the offense or that the shortest prison term would demean the seriousness of the offender's crime.  Ohio Rev. Code § 2929.41(A) required multiple sentences to be served concurrently with one another unless the court made certain findings of fact that warranted consecutive sentences.  See Ohio Rev. Code. §§ 2929.14(B) & (C), 2929.12, and 2929.41(E).

On June 24, 2004, the United States Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004).  *Blakely* held that the maximum sentence to which a court may sentence a defendant is the maximum sentence the court may impose solely on the basis of a prior conviction,[5] facts reflected in the jury verdict, or facts admitted by

---

[5]  It is worth noting that Smith had a prior conviction for burglary and was under community control at the time of the offenses at issue in this case.  The court revoked his release and sentenced him to an additional consecutive sentence after Smith entered the guilty plea he is now challenging.  *See* Answer, Exh. 4.  Because one of the factors allowing a court to sentence a defendant to more than the minimum sentence is a prior

the defendant.  *Blakely*, 542 U.S. at 303.  That is, the court may not enhance a defendant's sentence on the basis of judicial findings of fact other than notice of a prior conviction.

On February 27, 2005, the Ohio Supreme Court decided *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).  In *Foster*, the Ohio Supreme Court overturned §§ 2929.14(B) & 2929.41(E)(4) as unconstitutional in light of *Blakely*.  *Foster* severed these unconstitutional portions of Ohio's sentencing statutes and preserved most of the remainder of the statutes.  The Ohio Supreme Court held that the resulting statutes allowed a court to sentence a defendant to any sentence within the sentencing range of an offense and to consecutive sentences without making judicial findings of fact of the sort barred by *Blakely*.

Consequently, Smith's attorney was not ineffective for counseling Smith to accept a 15-year sentence.  As Smith's sentence post-dated the decisions in *Blakely* and *Foster*, the sentencing court could have sentenced Smith to two consecutive eight year terms for felonious assault and to consecutive terms of ten years each for aggravated robbery and kidnaping.  The potential sentence facing Smith under Ohio law, therefore, was 36 years.  It cannot be said that the advice to accept a 15-year term rather than risk a 36-year term was outside the range of reasonably effective assistance of counsel.  As counsel's performance did not fall below an objective standard of reasonableness, Smith's counsel was not ineffective for erring in the potential sentence Smith faced under Ohio law.

_____

conviction, Smith could have been sentenced to more than three years' imprisonment even if *Blakely* had not been decided prior to Smith's sentencing.

15

C.     Whether trial counsel was ineffective because Smith could only have received a
       five-year sentence without violating due process and the ex post facto clause of
       the United States Constitution

Smith argues that sentencing him to any more than five years' imprisonment as a

result of the changes wrought in the Ohio sentencing statute by *Blakely* and *Foster* was

a violation of due process and the *ex post facto* clause because it subjected him to a

retroactive law.  Consequently, Smith's attorney's advice to accept a 15-year sentence

was not reasonable and constituted ineffective assistance of counsel.  Respondent

denies that a sentence higher than three years would have violated due process or the

*ex post facto* clause.

First, Smith errs in asserting that *Blakely* was applied retroactively to his case.[6]

Smith committed his crimes on February 25, 2006.  The United States Supreme Court

decided *Blakely* on June 24, 2004.  Smith is correct that *Foster* was applied

retroactively insofar as the Ohio Supreme Court issued *Foster* on February 27, 2006.

Whether the holdings in *Blakely* and *Foster* were applied retroactively in

sentencing Smith, however, is irrelevant.  Retroactive application of *Blakely* or *Foster*

does not violate due process or the *ex post facto* clause.  "[D]ue process claims . . . may

proceed either upon the theory that a deprivation has occurred without procedural due

process or that there has been a substantive due process violation.  The latter includes

conduct that either "shocks the conscience," as in *Rochin v. California*, 342 U.S. 165,

172 (1952), or infringes a specific constitutional guarantee, as in *Monroe v. Pape*, [365

U.S. 167 (1961)]."  *Wilson v. Beebe*, 770 F.2d 578, 583 (6th Cir. 1985) (en banc).

---

[6]  Smith corrected this erroneous assertion in his Traverse.

16

Although all violations of the rights explicitly protected by the constitution are also violations of due process, where the constitution "provides an explicit textual source of constitutional protection . . . that [provision], not the more generalized notion of 'substantive due process,' must be the guide for analyzing [the] claims." *Portuondo v. Agard*, 529 U.S. 61, 74 (2000) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). *See also Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1013 (6th Cir. 1999).  As the *ex post facto* clause provides an explicit protection against the retroactive application of laws, the court will analyze Smith's claim using the *ex post facto* clause to weigh Smith's allegation.

Article I, § 9 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, § 9.  The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts.  Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text.  It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers v. Tennessee*, 532 U.S. 451, 460 (2001).

Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Id.* at 456. In particular, the Supreme Court has found that court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction.  *See Bouie v. City of Columbia*, 378 U.S. 347 (1964).  The Supreme Court has explicitly declined, however, to apply all the protections of the *Ex Post Facto* Clause to courts by way of the due process clause. *Id.*

17

at 458-461.

Foster differs considerably from Bouie.  The judicial enlargement of a criminal statute in Bouie was very different from the alleged enlargement in Foster.  In Bouie, a South Carolina statute prohibited entry onto land after the posting of notice prohibiting such entry.  Defendants were arrested pursuant to that statute during a lunch counter sit-in for civil rights when they were ordered to leave after being notified that they were trespassing if they remained.  The defendants had not been given notice prohibiting their entry to the lunch counter prior to their entry.  Upon appeal, the South Carolina supreme court re-interpreted the relevant statute to prohibit remaining on a property after notice was given as well as entry onto the property.  The Supreme Court struck down the convictions and agreed with the appellants that South Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement of the due process clause that a criminal statute give fair warning of the conduct which it prohibits.  According to the Court, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." Bouie, 378 U.S. at 354 (quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

Foster did not criminalize any conduct which had not been criminal prior to the decision.  Nor did Foster increase the maximum penalty that could be handed down for a crime.  Rather, Foster excised those portions of Ohio's sentencing statute that required judicial findings of fact before a court could sentence a defendant to more than a minimum sentence or to consecutive sentences.  Bouie does not prohibit this.

18

Smith's position is also foreclosed in part by *Dobbert v. Florida*, 432 U.S. 282 (1977).  As the Eleventh Circuit first pointed out in *United States v. Duncan*, 400 F.3d 1297 (11th Cir. 2006), *Dobbert* held that even a law later found to be unconstitutional may give fair warning of what is prohibited and of the penalties the state intends to exact for violating those prohibitions:

> Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers.  The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability to which the State ascribed to the act of murder.

*Duncan*, 400 F.3d at 1307-08.  Similarly, although Ohio's sentencing statutes at the time of Smith's criminal acts were unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts.  As the reinterpreted statute did not increase the maximum penalty to which Smith was potentially subject, Smith was given fair warning of what was prohibited or of the potential penalties to which he would be subject if he committed those acts.  *See United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 524-25 (2d Cir. 2005); and *United States v. Lata*, 415 F.3d 107, 112 (1st Cir. 2005).

In addition, Smith's position is contradicted by *United States v. Booker*, 543 U.S. 220 (2005), and its progeny.  In *Booker*, the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings of fact for upward departures from a base sentence. The Court found that such mandatory factfinding violated the holding in *Apprendi v. New*

19

*Jersey*, 530 U.S. 466 (2000), and excised those portions of the statute requiring judicial factfinding before increasing a base sentence.  The Supreme Court also allowed sentencing courts to engage in factfinding in determining sentences by using the previously-mandatory sentencing factors as guidelines that should be considered in sentencing.  The Court required other federal courts to apply both parts of its holding-- striking the mandatory findings on Sixth Amendment grounds and using the previously- mandatory factors as guidelines--to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform.  *Id.* at 249.  Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing guidelines and found that the resulting statute implied appellate review under a "reasonableness" standard.  *Id.* at 259-60.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality.  *Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96.  Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial factfinding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences.  *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497- 98.  It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations.  *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 498.  Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive sentences, using the previously-mandatory factors as guidelines to determine where in

20

the range a defendant should be sentenced.  The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality.  *Id.*

Finally, a number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws.  Those challenges have been universally rejected.  *See United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan*, 400 F.3d at 1306-08; and *Alston-Graves*, 435 F.3d at 343.  Smith makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.

In summary, the Ohio statute under which Smith was to have been sentenced would have permitted a sentence of up to 36 years' imprisonment.  Neither the due process clause nor the *ex post facto* clause would have limited that potential sentence.  Consequently, Smith's attorney's advice to accept a 15-year term rather than risk a potential 36 year term fell within the broad range of reasonable representation to be expected from effective counsel.  As Smith's counsel was not objectively deficient in his representation, Smith's contention that counsel was constitutionally ineffective is without merit.  For this reason, the court should dismiss Smith's ground for relief.

IV.  Conclusion

For the foregoing reasons, the court should dismiss Smith's petition.


Date:  May 26, 2009                              /s/ Nancy A. Vecchiarelli
                                                 United States Magistrate Judge


## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

22